DENNIS L. ANKENY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ankeny v. Commissioner
Docket No. 32141-85.
United States Tax Court
T.C. Memo 1987-247; 1987 Tax Ct. Memo LEXIS 244; 53 T.C.M. (CCH) 827; T.C.M. (RIA) 87247; May 11, 1987. *244 Held: Petitioner made a donation to a church of part of the proceeds of the sale of his property, not a donation of a fractional equity interest in the property as such, and is entitled to a deduction only for the cash contribution. Dennis L. Ankeny, pro se. Michael R. McMahon, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $3,933 in petitioner's Federal income tax for 1981. The issue for decision is whether petitioner is entitled to a charitable contribution deduction for an 8-percent interest in real property as such or for an 8-percent interest in the proceeds of the sale of the property. FINDINGS OF FACT At the time the petition was filed, petitioner was a resident of the State of Washington. On January 23, 1981, petitioner received an offer to purchase for $225,000 a duplex house that he owned and rented in Seattle, Washington. On February 6, 1981, petitioner made a counteroffer to sell the house for a price of $235,000, and his offer was accepted on February 6 or 7, 1981. On February 6, 1981, Pacific West Escrow Co., Inc., prepared an *245 inartfully drafted [1] quitclaim deed for petitioner whereby petitioner intended to convey 8-percent of the proceeds of the sale of the house to Dunlap Baptist Church (hereinafter the Church). The quitclaim deed was acknowledged by petitioner on February 23, 1981. Petitioner's objective was to make available, through the Church, approximately $19,000 to the Royal Brougham Memorial Fund for the construction of a sports arena at Lake Retreat Bible Camp. There is no evidence the deed was ever recorded, and the Church did not share in the rent for the period between the execution of the quitclaim deed and the closing of the sale. The sale of the property closed on March 25, 1981. On or about the *246 same day, Pacific West Escrow Co., Inc., delivered to the Church a check in the amount of $18,800 representing 8 percent of the proceeds from the sale of the property. The Church did not sign the deed conveying the property to the purchaser or any of the other papers closing the transaction. On his income tax return for 1981, petitioner claimed a charitable contribution deduction of $18,800 for the "Fair market value of real estate donated to Dunlap Baptist Church," reduced the sale price of the property by $18,800, and made correlative adjustments to basis and costs of sale. Respondent determined the deficiency by treating the transaction as a sale by petitioner of his entire interest in the property and a cash donation of $18,800 to the Church. OPINION The issue as to whether a taxpayer has made a charitable contribution of an interest in appreciated property or of the proceeds of the sale of such property has been frequently litigated in a variety of factual settings. In , the controlling shareholder of a corporation donated notes to three charitable foundations, and in the same month the corporation redeemed *247 the notes. This Court rejected the Commissioner's contention that the shareholder realized income as a result of the donation and redemption of the notes, stating (at 913): A gift of appreciated property does not result in income to the donor so long as he gives the property away absolutely and parts with title thereto before the property gives rise to income by way of a sale. * * * In , the taxpayer made a gift to a charity of a $10,000 equity in a stand of timber and within a few weeks sold the entire stand on behalf of the charity and himself, specifying that the $10,000 was payable directly to the charity. The Court held that the taxpayer did not realize income from the sale of the $10,000 equity because the gift preceded the sale, stating (at 789): The test seems to be simple: Did the donor part with title to the property producing the income? If he did, then the sale by the donee does not result in taxation to the donor. But if the donor keeps title to the property and gives away only current income, such income is taxed to him as if actually received to prevent planned income splitting. * * * [The taxpayer] *248 parted with an equity of $10,000 in his timber, and the subsequent sale thereof does not cause realization of income by him. Where the facts and circumstances show that the donor retained control over the asset after a purported transfer, however, the courts have held that the transfer was an anticipatory assignment of income which did not relieve the donor of taxation on the sales proceeds. See, e.g., , affg. ; . The evidence is clear in this case that the ambiguous quitclaim deed, never recorded, purporting to convey to the Church an equity interest in petitioner's real property was not executed until February 23, 1981, a full month after petitioner had contracted to sell the property. At that point, petitioner had no legal alternative except to convey the property to the purchaser and thereby become entitled to the proceeds of the sale. The Church took whatever interest it received under the quitclaim deed subject to the contract of sale. It never had control over any interest in the property. *249 The quitclaim deed, shown on the escrowee's closing statement as the reason for the payment of part of the sales proceeds to the Church, was an anticipatory assignment of income which does not protect petitioner from taxation on the full amount of the gain realized on the sale; he is entitled to a deduction only for the cash contribution. The correlative adjustments made in the notice of deficiency are also sustained. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. The quitclaim deed states: The Grantor DENNIS L. ANKENY for and in consideration of 8 percent of Sales price of the following convey and quit claim to Dunlap Baptist Church for Royal Brougham Memorial Fund the following described real estate, situated in the County of King State of Washington including any interest therein which grantor may hereafter acquire: Tract 3, Emerson Subdivision, according to the plat recorded in volume 38 of plats, page 27, in King County, Washington.↩